

2010 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-4-2010

# Beverly Lindsay v. PA State Univ

Precedential or Non-Precedential: Non-Precedential

Docket No. 09-2059

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2010

Recommended Citation

"Beverly Lindsay v. PA State Univ" (2010). *2010 Decisions.* Paper 1795.
http://digitalcommons.law.villanova.edu/thirdcircuit_2010/1795

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2010 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 09-2059
_____

DR. BEVERLY LINDSAY,
                                                Appellant

v.

PENNSYLVANIA STATE UNIVERSITY
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(D.C. Civ. No. 4:06-cv-01826 )
District Judge:  Honorable James F. McClure, Jr.
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
February 22, 2010
Before:  CHAGARES and WEIS, Circuit Judges and RODRIGUEZ*,
District Judge
(Opinion filed: March 4, 2010)

_____

OPINION
_____

WEIS, Circuit Judge.

        Plaintiff is a professor on the faculty of The Pennsylvania State

University.  She filed suit in September 2006, alleging that the University discriminated

_____
* The Honorable Joseph Rodriguez, United States District Judge for the District of New
Jersey, sitting by designation.

1

against her on the basis of race and gender, failed to accommodate her disability, and condoned a hostile work environment, in violation of Title VII, 42 U.S.C. § 2000e-2; 42 U.S.C. § 1981 et seq.; 42 U.S.C. § 12101 et seq.; and Title IX, 20 U.S.C. § 1681 et seq. She also contended that the University had breached a prior Settlement Agreement. The District Court entered summary judgment for defendant on all claims. After a careful review, we will affirm.

Plaintiff resigned as Dean of the University's Office of International Programs in 2002 and resumed her position as a tenured full professor in the College of Education, agreeing to "perform the normal and customary functions, duties and responsibilities of" that position as assigned by her department head. However, differences arose between plaintiff and her colleagues soon thereafter.

The plaintiff's grievances were numerous and well-documented, as illustrated by the voluminous record. They included claims that her salary increases and opportunities for promotion lagged in comparison to those of her colleagues and that the University failed to adequately and promptly accommodate her requests for an "ergonomically correct" office and first- or business-class air travel. She also alleged that she was not permitted to teach the number or type of courses she requested and was treated disrespectfully by students, colleagues, and administrators alike.[1]

---

[1] Before instituting this suit, plaintiff filed employment discrimination charges with the EEOC in January 2005. In April and October of that same year, she filed complaints with the Pennsylvania Human Relations Commission.

The District Court performed an extensive analysis of the plaintiff's allegations and found no genuine issue of material fact. We exercise plenary review over that determination. Gardner v. State Farm Fire & Cas. Co., 544 F.3d 553, 557 (3d Cir. 2008).

The racial and gender discrimination claims were properly analyzed under the test set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). We agree with the District Court that plaintiff pointed to no "evidence from which a factfinder could reasonably conclude that the [University's] proffered reasons" for limiting her salary increases – her already substantial salary and comparatively weaker performance – "were fabricated." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).

As for the allegations regarding classes and course load, the University produced evidence that plaintiff has been able to teach most of the courses she requested and obtained a lighter schedule without securing external funding as required. Again, plaintiff failed to demonstrate that these responses were pretextual.

We also agree with the District Court that the handling of the plaintiff's travel and office furnishings requests was not the result of discriminatory animus. The record shows that the University departed from policy and actually increased the usual travel allowance for the plaintiff's benefit. Likewise, the record reveals that the University made many efforts to accommodate the plaintiff's request for an

"ergonomically correct" office, but plaintiff often failed to cooperate.[2]

The District Court was not persuaded that several discrete incidents cited by plaintiff amounted to evidence of a hostile work environment. Nor are we. See Kunin v. Sears Roebuck & Co., 175 F.3d 289, 293 (3d Cir. 1999) (listing elements of hostile work environment claim, including, inter alia, "pervasive and regular" discrimination (citation omitted)). Finally, we agree with the District Court that plaintiff failed to prove that the University breached the Settlement Agreement.[3]

In closing, we note our agreement with the district judge that, on this record, it appears that the University made every effort to accommodate plaintiff. We commend the District Court for its painstaking survey of this case. Finding no reversible error, we will affirm.

---

[2] Relatedly, we find that the plaintiff's claim under the ADA fails because plaintiff has not demonstrated a medical condition that "'significantly limit[s] one or more major life activity,'" i.e., "'those basic activities that the average person in the general population can perform with little or no difficulty.'" Marinelli v. City of Erie, Pa., 216 F.3d 354, 361 (3d Cir. 2000) (quoting 29 C.F.R. App. §1630.2(i) (1999)).

[3] Plaintiff did not raise her argument that the University breached the confidentiality portion of the Agreement until her brief opposing summary judgment. For that reason, the District Court declined to consider that issue or other allegations of race and gender discrimination first raised at the summary judgment stage. We find no fault with the District Court's decision. Allowing plaintiff to effectively amend her complaint so late in the litigation, and after discovery had taken place, would have unfairly prejudiced the University. Even if that were not the case, however, we find no support in the record for these untimely allegations.